The next matter on our calendar is Nunez v. United States of America. Good morning, Your Honors. May it please the Court? I'm Edward Zass. I'm here for the Petitioner, Miguel Nunez. The District Court granted a Certificate of Appealability that's limited to a single question, whether Nunez's 2255 motion is timely under Section 2255, F3. The answer to that question is yes. Nunez's motion asserts the same right initially recognized in Johnson and made retroactive on collateral review by Welch. All right, but the problem for you, as you know, is that Johnson does not speak to the sentencing guidelines and especially not to a distinction between the guidelines as they've been interpreted post-Booker and the mandatory guidelines, so how does it clearly establish the vagueness of the mandatory career offender guideline? Your Honor is certainly right. If the question is what's the holding of Johnson, it's about the ACCA, but under the statute of limitations, the question is didn't Mr. Nunez file within a year of the date that the right — does it assert the right recognized in Johnson? And so I would distinguish between a holding and — But what is the right recognized in Johnson? It's not about the guidelines. That's right, but it is — it is the right not to be sentenced under a mandatory residual clause that's identical — in our case, it's verbatim identical to the residual clause struck down in ACCA. But the Supreme Court has looked at each of the places where this clause appears separately. That's what they've been doing the last several years. So how can we rely on this ACCA holding and apply it in the sentencing context? Well, because — you're right, Your Honor, there are a series of subsequent cases. So there's Sessions against Amaya and United States against Davis. I think this Court is permitted to look to those cases to understand, well, what is the scope of the right that was initially recognized in Johnson? The government says the right recognized in Johnson is solely about the ACCA. The Supreme Court has held that it's not limited to ACCA. So if you look at Sessions or Amaya, the Court says verbatim at the very end of its opinion, quote, Johnson tells us how to resolve this case. And that was a case about Section 16B of Title 18, which is not — And Justice Sotomayor, in her dissent from the denial of cert, highlights the openness of this question as in faulting the Court for not taking the issue. So I'm still perplexed as to how we would say that it's clearly established. I know the Seventh Circuit agrees with you, but so far four others do not. Well, Your Honor, just at the tail end of what you said, it doesn't have to be clearly established. That's a different part of it that doesn't apply here. It just has to be what's the right Mr. Nunez is asserting? And asserting is the statutory word. And is it the right recognized in Johnson? So from Mr. Nunez's point of view, he reads the residual clause. He says, hey, that's the same residual clause that the Supreme Court struck down in Johnson. And it fixed my sentence just the way it fixed Mr. Johnson's sentence. I want to assert that right. Now, he may not prevail on the merits. Judge Kaplan could find probably a host of reasons that the government has offered him to deny relief on the merits at the end. He didn't reach it. He didn't reach it. We didn't even get through the front door because the judge said you're not asserting the right recognized in Johnson. Well, of course we are. It's the exact right recognized in Johnson. Do you see no distinction between applying that principle in a statutory context as opposed to a guideline context? There's no material distinction because the Supreme Court itself in Beckles emphasized that the mandatory guidelines fixed the sentencing range just the way statutes fix the sentencing range. Now, of course, as you know, there were ways for a judge to depart under the mandatory regime in extraordinary circumstances. But the court has made clear that that does not distinguish the mandatory guidelines from the statute. After all, in ACCA, you could get below the mandatory 15 years in certain extraordinary situations as well. If the government, for example, files a substantial assistance motion, you could get below the guidelines. But there's no difference for our purposes between the mandatory guidelines and statutes. But going back to Judge Radji's point, if the Supreme Court held, as it did, that Johnson resolved the residual clause in 16B, which is not about sentencing. It's a different context, and it has a different language. But if it resolved that case, I don't see how it doesn't resolve this one. We're much closer to the Armed Career Criminal Act. Well, the problem is that the Supreme Court has not been willing to apply Johnson to the guidelines as they presently operate. So even though there's the same language, they have not recognized that right. Now we're somewhere in the middle. We're not in ACCA. We're not in discretionary guidelines. And so it seems to me we don't know what right the Supreme Court would conclude that someone has under the guidelines. Well, I think, Your Honor, just to be clear, there is a distinction that the Seventh Circuit draws between the right being asserted. That's a timeliness question versus the merits question on does Johnson— You could hold here, just on the limited question that Judge Kaplan granted, that, yes, it's timely because he is asserting that right, the Johnson right. It could still be open to Judge Kaplan to then say, okay, let's get to the merits and let's litigate. Are there distinctions between mandatory and advisory guidelines sufficient to warrant the denial of relief on the merits? But I don't think they collapse into the same thing. In conclusion? I'm sorry? In conclusion, you have your red light on? Yes. I just wanted to say that the government has made a series of alternative arguments for affirmance that were not included in the Certificate of Appealability, that were not decided by the district court. And all of them, in one way or another, raise very difficult and open questions, some of them involving circuit splits. And so I think it would be more appropriate, if the Court agrees that this petition is timely, to not address those alternative arguments and to allow Judge Kaplan the opportunity, in the first instance, to resolve some of them. You explained to your client, I assume, that even if this issue were to be resolved in his favor, that would not preclude Judge Kaplan from imposing the exact sentence he imposed. That's true. And, you know, I've read the sentencing transcript. I don't think there's much doubt as to what he would do. Well, it certainly, I mean, he got a 30-year sentence for a very brutal crime. So I think that is very possible. But the government did offer that opportunity to Judge Kaplan already to say that. He could have just assumed it was timely and indicated. But he didn't. All we're trying to do now is just get the case before Judge Kaplan, overcoming the timeliness bar. Thank you, counsel. Thank you so much for your time. We'll have you reserve two minutes for rebuttal.  Good morning. May it please the Court. I am Nathan Wren, and I represent the government in this case. I also represented the government below. For his motion to be timely, the petitioner must assert a right that has been recognized by the Supreme Court. And the district court correctly held that the right asserted here has not been recognized by the Supreme Court, because what the petitioner is asserting is a right, as he describes it, not to be, quote, sentenced under a binding residual clause. Now, there's no language like that in Johnson. Johnson recognized a right not to be convicted under the specific residual clause in the Armed Career Criminal Act. What's the difference? Well, there's a number of differences, which were actually, many of which differences were determinative in the Supreme Court's subsequent decision in Beckles. The Supreme Court was presented with an analogous question in Beckles and said, well, the guidelines are different from statutes. They direct district courts how to exercise their sentencing authority. They don't direct the primary conduct of the public. We haven't even ever resolved, as the Supreme Court has not ever even resolved, whether the doctrine of vagueness applies to sentencing guidelines at all. And if it did, it would raise a host of questions, because, as the Supreme Court has recognized, there's — I understand in the context of discretionary guidelines, but what about mandatory guidelines? Well, in the context of mandatory guidelines, similarly, the general doctrine of vagueness, which is rooted in notice to the public, wouldn't be applicable to a set of guidelines directed at a sentencing judge. Now, obviously, the mandatory guidelines occupy, as Judge Raggi stated, a midpoint in certain ways between a statute with a residual clause and a set of advisory guidelines with a residual clause. But that's exactly the point, is that's ultimately a question for the Supreme Court to resolve. Is a case like this more analogous to the situation we dealt with in Beckles or more analogous to the situation we dealt with in Johnson? And as Justice Sotomayor recognized in her concurrence in Beckles, the Court has expressly declined to reach that question. It's an open question. And because it's an open question, that means that this motion does not fit within the exception, the very clearly articulated exception in 2255, to the otherwise applicable statute of limitations. Now, the petitioner attempts to recharacterize Johnson at this higher level of generality about sentencing under binding residual clauses, but that's simply not what 2255 permits people to do. That would open the door to a wide number of claims that are exactly the sort of things that Congress attempted to prevent in imposing that limitation in 2255. Let me ask you practically what would happen if we were to accept the defendant's argument and he were to prevail on it, that under the mandatory guidelines you could not be sentenced under the residual clause. So his sentence would be vacated and he would be resentenced under what? I mean, we wouldn't order resentencing under guidelines held invalid. What would the government think was the appropriate relief here? Well, it does raise a number of difficult questions about how it would work in a context in which he was sentenced under a mandatory guidelines regime and presumably under Booker would now have to be resentenced under an advisory guidelines regime. We would have to reopen the sentencing procedure, presumably with a new pre-sentence report. One of the things I think that raises, especially as applied in this case, it illustrates the concerns Congress had with the finality of criminal judgment when it articulated only very narrow exceptions to the statute of limitations. This is a great example of that interest of finality being especially important because here if you were to reopen that procedure, obviously the victim would have to play a role and face the agonizing decision of whether to again participate in a sentencing proceeding and relive this incredibly brutal crime. But presumably that would be what would have to happen if we were to say that the Supreme Court's decision in Johnson somehow also sub silentio resolved the guidelines question that's raised by this motion. Why would Judge Kaplan be obligated to take testimony at a resentencing? Well, he wouldn't be obligated to. The victim would have a right to participate in a resentencing proceeding. I don't want to show up. And Judge Kaplan is familiar with the record. As Judge Regis has articulated his position. There would need to be a resentencing and there would be a procedure associated with that in which I think it's very likely that would be the case. We wouldn't describe any mandatory procedure if we sent it back for resentencing. It would be up to the district court, wouldn't it? Well, except for the concern that's articulated here that it doesn't seem that the district court could consistently with Booker resentence under the procedures that were in place in 2000 when the sentencing initially took place. So it would raise very complicated questions about how to conduct a resentencing under an advisory guidelines regime when the original sentencing was done pursuant to finding a departure was appropriate due to the heinous nature of the case. How many cases do you think would fall into this category? How many cases of pre-Booker of sentencing under this section? It's got to be a finite number of cases, don't you think? It is a finite number, but it is certainly a . . . There are a number of cases where people were sentenced pursuant to the career offender guideline. Those tend to be long sentences, so it's likely that this is far from the only case in which this issue is presented. I know, but complexity is not a reason not to do it. Well, what I was saying was that it illustrates the concerns with the finality of criminal judgments, which animated why Congress passed 2255 and the fact that it said you only get to bring a new claim if there's a newly recognized Supreme Court right that's applicable. And there isn't one here. The Supreme Court has not recognized this right. And to extend it to say that . . . In the context of . . . in the guideline context. That's correct. The Supreme Court has not recognized this right. And to expand Supreme Court holdings . . . None of these cases from the other circuits, Seventh Circuit and all those others, correct if I'm wrong, my recollection is did not involve mandatory guidelines. I'm not sure if that's . . . I believe that is actually not correct, Your Honor. I believe they . . . I think they do. They do involve mandatory guidelines. Because that's exactly . . . because otherwise they would have been resolved by Beckles. So . . . Counsel, deal with the fact in the moments remaining that the language at issue here is identical to the language that the Supreme Court has otherwise found vague and unenforceable. The language is identical. That's correct. And the language is also identical to the language in Beckles, where the Supreme Court held that the residual clause did not pose any vagueness concerns. So the issue here is the context in which that language operates, not necessarily that this type of language is fundamentally bankrupt. In fact, the Supreme Court said the opposite in Beckles. And so we don't know how the Supreme Court would necessarily address this particular question that's proposed by this motion, which is exactly why 2255F3 does not apply here, and the motion is untimely. Thank you. Mr. Zais, you've returned. You've reserved two minutes for rebuttal. Our position is not as the government described it. It's not that anyone can come in asserting any binding residual clause. This is, as Judge Kula has just pointed out, it's the exact same language that functions in exactly the same way. He's asserting the very right . . . That's not quite right. I mean, even under the mandatory guidelines for departure opportunities, which distinguishes this from a criminal statute that results in . . . that affects conviction and affords no discretion. And that's your problem is that the exact language, when it was seen in Beckles, was said not to provide a right. Now we're in a situation where, well, it's more mandatory than Beckles, but it's not what ACCA is. And so to that extent, we don't know whether there's any right here. Continue. Your Honor, the government makes all it can out of Beckles, but if you read Beckles, the premise of Beckles is distinguishing advisory guidelines from the mandatory. It doesn't directly decide whether the mandatory would be like a statute, but it is strongly indicative that all they're saying is it doesn't apply to the advisory because they are advisory. Judge Ratchett, your point is well taken, that ACCA did involve an element of the offense conduct. This doesn't. But the Supreme Court held, even in Booker itself, that the mandatory guidelines had the force and effect of law, even though there were departures and extraordinary circumstances. But, again, as I said earlier, that's true of ACCA. A substantial assistance motion could get you out from under the 15 years. So it wasn't absolute, but it did have the force and effect of law. Well, you know, this is precisely a case where the Court understood that it was not bound by the guidelines. Well, no, it was bound by the guidelines, but it found an extraordinary circumstance to depart. Right. I mean, it was not required to impose a guideline sentence, and it didn't. That's true. In this particular case, that's true, but it didn't make the guidelines any less binding than they were for all judges. Just on the question of potential relief, again, all we're asking for is that we satisfy this very specific language of 2255F3, which says we get an additional year to file the petition, starting from the date on which the right asserted, asserted, not necessarily recognized, but asserted, was initially recognized by the Supreme Court. And you're counting that date from Samuel Johnson? Is that the date? From 2015 Johnson, yes. And it's undisputed that he filed within a year of that. The government says, well, you've got to wait. Maybe the Supreme Court one day will make the career offender, will expressly invalidate the career offender residual clause. Given the Supreme Court's denial of cert in Brown, that, for all intents and purposes, is not going to happen, which means that many of these people who have very good claims that they were sentenced under an unconstitutional statute will never get to come to court and have that decision heard. Judge Pooler, on the issue of how many of these there are, the Supreme Court said in Brown, I think the number was about 1,000 at that point, of people who might be free booker people. Right, but that number is dwindling, partly because some people have completed their sentences. There are no new people in the pipeline, so the number is going down. So it's not necessarily a floodgate for a huge number of claims. And it also, all it means is the person can file timely. A judge could look at it and summarily say, dismissed, this is not the same right, or for a number of other procedural reasons. This is just a question of timeliness. On the last point, the government makes a good point that Congress was concerned about the finality of judgments, but it didn't preclude people altogether. It left open this additional year for a kind of a new right that the Supreme Court has recognized. It's hard for me to see how Johnson, again, invalidated 16b, but doesn't invalidate this. It's much closer. Thank you so much. Thank you both. We'll reserve decision.